UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEWIS WILDER, as Trustee for the Lewis Wilder Revocable Trust, 12/10/2010, Individually And On Behalf Of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　　vs.<br><br>NEWS CORPORATION, K. RUPERT MURDOCH, JAMES MURDOCH and REBEKAH BROOKS,<br><br>　　　　　　　　Defendants. | 11-CV-4947(PGG)<br><br>ECF Case |

## MEMORANDUM OF LAW IN SUPPORT OF LEWIS WILDER'S MOTION FOR LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

Arthur N. Abbey
Nancy Kaboolian
ABBEY SPANIER RODD & ABRAMS, LLP
212 East 39th Street
New York, New York 10016
Telephone: (212) 889-3700
Facsimile: (212) 684-5191

*Counsel for Lewis Wilder and
Proposed Lead Counsel for the Class*

# TABLE OF CONTENTS

I. FACTUAL BACKGROUND ........................................................................................... 1

II. NYLS SHOULD BE APPOINTED LEAD PLAINTIFF ............................................... 4

    A. The PSLRA Standard for Appointing Lead Plaintiff ............................................ 4

    B. WILDER SATISFIES THE PROVISIONS OF THE PSLRA AND SHOULD BE APPOINTED LEAD PLAINTIFF ........................................................................ 5

        1. Wilder Has Satisfied The PSLRA Procedural Requirement ......................... 5

        2. Wilder Processes the Largest Financial Interest in the Relief Sought ........... 6

        3. Wilder Satisfies Rule 23's Typicality and Adequacy Requirements ............. 6

            (a) NYLS's Claims Are Typical Of The Claims Of The Class ................... 7

            (b) NYLS Will Fairly and Adequately Represent the Interests of the Class ................ 8

III. The Court Should Approve NYLS's Choice Of Counsel ............................................... 9

CONCLUSION ............................................................................................................................. 9

# TABLE OF AUTHORITIES

**Cases**                          **Page**

*In re Drexel Burnham Lambert Group, Inc.*,
   960 F.2d 285 (2d Cir. 1992) ............................................................................. 7

*In re eSpeed, Inc. Sec. Litig.*
   232 F.R.D. 95 (S.D.N.Y. 2005) ....................................................................... 6

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D. N.Y. 1998) ............................................................... 6

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D. N. Y. 1995) .................................................................. 7

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) ..................................................................... 8

**Statutes**

12 U.S.C. §78-u4(a)(3)(B)(iii)(II) ............................................................................ 7

15 U.S.C. §78u-4(a)(3)(A) ....................................................................................... 5

15 U.S.C. §78u-4(a)(3)(A)(i)(II) .............................................................................. 4

15 U.S.C. §78u-4(a)(3)(B) ....................................................................................... 5

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) ............................................................................. 5

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb) ...................................................................... 6

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc) ....................................................................... 6

§21D(a)(3)(A)(i) ....................................................................................................... 4

§21D(a)(3)(B)(v) ...................................................................................................... 9

**Rules**

Fed. R. Civ. P. Rule 42(a) ........................................................................................ 1

Lewis Wilder, as Trustee for the Lewis Wilder Revocable Trust, 12/10/2010 ("Wilder" or "Movant") respectfully submits this memorandum pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for entry of an order appointing him as the Lead Plaintiff, and approving his choice of counsel as Lead Counsel for the Class.[1]

Movant believes that he has the largest financial interest in the relief sought by the class. Movant will ensure that the litigation is conducted in the best interests of the members of the class and is not subject to any unique defenses that would render him incapable of adequately representing the class. Movant is familiar with the applicable provisions governing the appointment of the lead plaintiff in securities class actions, understands his responsibilities to the class, and is willing and able to oversee the prosecution of this action. Therefore, Movant respectfully requests that the Court grant his motion to be appointed Lead Plaintiff, and approve his selection of Lead Counsel.

## I.   FACTUAL BACKGROUND

News Corp. is a Delaware Corporation with its principal executive offices located at 1211 Avenue of the Americas, New York, New York. News Corp. is a diversified global media company. Its properties include 39% of British Sky Broadcasting Group plc ("BSkyB") a satellite broadcasting company headquartered in London and the *New York Post*. *News of the World*, a United Kingdom newspaper is run by News International, News Corp.'s 100% wholly owned British newspaper division.

---

[1] The first steps in a securities class action are consolidation of related actions, appointment of a lead plaintiff and approval of the lead plaintiff's selection of lead counsel. Consolidation is appropriate pursuant to Fed. R. Civ. P. Rule 42(a). Since Movant is not aware of any related securities class action cases he is not moving for consolidation at this time.

1

As the world has learned, News Corp.'s reporters have been hacking into the cell phone messages of more than 4,000 people for years. The revelation of this illegal activity set off a furious public backlash worldwide. This case was filed against News Corp., Rupert Murdoch ("R. Murdoch"), James Murdoch ("J. Murdoch") and Rebekah Brooks ("Brooks) (collectively referred to as the "Defendants") alleging violations Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder (the "Complaint").

The Complaint is brought on behalf of purchasers of News Corp. common stock from March 3, 2011, the day the British government gave News Corp. its approval to allow the Company to increase its stake in BSkyB from 39% to 100%, through July 11, 2011, the day News Corp. withdrew its agreement to spin off Sky News (the "Class Period").

On July 7, 2011, in hopes of salvaging its reputation and the acquisition of BSkyB, Defendants elected to shut down *News of the World*, its most profitable newspaper. On July 11, 2011, in a last minute attempt to salvage regulatory approval of the BSkyB transaction and to avoid any investigation into whether News Corp. would meet the "fit and proper" test to own all of BSkyB, News Corp withdrew its agreement to spin off Sky News. On this news, News Corp.'s shares fell $1.27.

The Complaint alleges that the efforts to conceal and misrepresent this illegal activity intensified with News Corp.'s desire to purchase the 61% of BSkyB it did not already own. Ultimately, as a result of the growing phone hacking scandal News Corp. was forced to withdraw its proposal for BSkyB. The Complaint alleges that Defendants knew or were reckless in not knowing that reporters from *News of the World* were using illegal means to gather news. In this regard the Complaint alleges that R. Murdoch and J. Murdoch had a close personal and professional relationship with their editors-in-chief, Brooks and Andy Coulson ("Coulson") and

2

the fact that Brooks and Coulson were fully aware of and even involved in this conduct, it is inconceivable that defendants R. Murdoch and J. Murdoch would not have known how Brooks and Coulson ran the newspaper.

The Complaint alleges that Defendants knew or were reckless in not knowing that, with the knowledge and consent of their editors, employees at *News of the World* have been hacking into the cell phones messages of more that 4,000 people for years. In an effort to conceal this illegal activity, Defendant J. Murdoch authorized out-of-court settlements to victims of phone hacking and recently admitted that the Company repeatedly misled Parliament regarding this matter. In fact, Defendants have been covering up this activity for years. When asked by a British parliamentary committee in 2007 whether the *News of the World* had "carried out a full, rigorous internal inquiry" into the use of illegal phone hacking by the newspaper and was "absolutely convinced" it was limited to a single reporter, Les Hinton then-executive chairman of *News of the World*'s owner News International did not hesitate and answered: "Yes, we have."

However, nothing was further from the truth. In fact, not only had Defendants not done a "full, rigorous internal inquiry" into the hacking issues but they set out on a course of conduct to conceal and cover up the illegal activity. The effort to conceal and misrepresent this illegal activity intensified with News Corp's desire to purchase the remaining 61% of BSkyB.

On April 10, 2011, J Murdoch told PBS' Charlie Rose that News International had defused a reputation crisis over allegations of widespread illegal phone hacking at the *News of the World* newspaper: "You talk about a reputation crisis—actually the business is doing really well. It shows what we were able to do is really put this problem into a box."

In an effort to keep the problem in the "box", Defendants maintained that a single rogue reporter had been responsible for the phone hacking. The "rogue employee" story was a

3

complete fabrication. While publicly stating that a single rogue reporter was responsible for the phone hacking, News Corp. commenced a course of action to settle hacking claims with 20 victims who had filed lawsuit. In April 2011, News Corp. apologized to 20 hacking victims and stated that News International had set up a fund of as much as 20 million pounds ($33 million) to compensate victims. But, as ultimately revealed and as Defendants knew, the hacking scandal was far wider than 20 victims.

## II.  WILDER SHOULD BE APPOINTED LEAD PLAINTIFF

### A.  The PSLRA Standard for Appointing Lead Plaintiff

Section 21D of the Exchange Act, as amended by the PSLRA, sets forth the procedure for the selection of Lead Plaintiff to oversee class actions brought under the federal securities laws. Specifically, §21D(a)(3)(A)(i) provides that within 20 days after the date on which the first class action is filed under the PSLRA, the plaintiff shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice informing class members of the action and their right to file a motion for the appointment of lead plaintiff.

The PSLRA provides that within 60 days after the publication of the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed Lead Plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i)(II). Section 21D(a)(3)(B) of the Exchange Act directs the Court to consider any motions by a plaintiff or purported class members to serve as Lead Plaintiff in response to any such notice by not later than 90 days after the date of publication pursuant to §21D, or as soon as practicable after the Court decides any pending motion to consolidate any actions asserting substantially the same claim or claims. Under this section the Court shall consider any motion made by a class member and shall appoint as lead

plaintiff the member or members that the Court determines to be most capable of adequately representing the interests of class members.

In determining the "most adequate plaintiff" the PSLRA provides that:

> [T]he Court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –
>
> (aa)   has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

§21D(a)(3)(B)(iii)(I); 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

### B. WILDER SATISFIES THE PROVISIONS OF THE PSLRA AND SHOULD BE APPOINTED LEAD PLAINTIFF

#### 1. Wilder Has Satisfied The PSLRA Procedural Requirement

A notice pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") was published on July 20, 2011 over the PR Newswire. Declaration of Nancy Kaboolian ("Kaboolian Dec."), Ex. A. The notice informed potential class members of the pendency of the action and their right to move to be appointed lead plaintiff and to designate their choice of lead counsel within 60 days. Accordingly, pursuant to the PSLRA all motions for lead plaintiff must be filed no later than September 18, 2011. The time period during which class members may move to be appointed lead plaintiff herein under 15 U.S.C. §78u-4(a)(3)(A) and (B) expires on September 18, 2011.[2]  Pursuant to the PSLRA, and within the requisite time frame after

---

2   Since September 18, 2011 is a Sunday, the last day to move is Monday, September 19, 2011.

publication of the required notice, Movant herein timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the class.

Movant duly signed a certification stating that he has reviewed a complaint in this action, and is willing to serve as the representative party on behalf of the Class. Kaboolian Dec., Ex. B. The certification demonstrates that Movant has suffered a loss of approximately $5,271.00 in connection with his investment in News Corp.

### 2. Wilder Processes the Largest Financial Interest in the Relief Sought

During the Class Period, Movant invested $5,271.00 in News Corp common stock and has suffered a loss of approximately $5,271.00. Kaboolian Dec., Ex. B. To the best of his knowledge, Movant has the largest financial interest in the relief sought by the Class and is therefore, is presumptively the most adequate plaintiff pursuant to the PSLRA. See 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).

### 3. Wilder Satisfies Rule 23's Typicality and Adequacy Requirements

In addition to possessing the largest financial interest in the outcome of the litigation, the PSLRA provides that the Lead Plaintiff must also "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). With respect to the qualifications of the class representative, Rule 23(a) requires that the claims be typical of the claims of the class and that the representative will fairly and adequately protect the interests of the class. At this stage of the action, Wilder "need only make a preliminary showing that it satisfy the typicality and adequacy requirements of Rule 23." *In re eSpeed, Inc. Sec. Litig.* 232 F.R.D. 95, 102 (S.D.N.Y. 2005) (quoting *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286 (E.D. N.Y. 1998).

6

Moreover, the PSLRA provides that the presumption in favor of the most adequate plaintiff may be rebutted only upon proof that the individuals or the group "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 12 U.S. C. 78u-4(a)(3)(B)(iii)(II). Thus, in deciding a lead plaintiff motion, the Court may limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification.

As detailed below, Movant satisfies the typicality and adequacy requirements of Rule 23(a).

### (a) Wilder's Claims Are Typical Of The Claims Of The Class

The typicality requirement of Rule 23(a)(3) is satisfied when a named plaintiff has: (a) suffered the same injuries as the absent class members; (b) as a result of the same course of conduct by defendants; (c) and its claims are based on the same legal issues. *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). Typicality arises when a proposed lead plaintiff's claims arise from the same conduct from which other class member's claims and injuries arise. Possible factual distinctions between plaintiff's claims do not vitiate typicality, as the same legal theory may control even in the face of differences in fact. *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 2008 (S.D. N. Y. 1995) ("The typicality requirement of Rule 23(a)(3) is liberally construed; and 'typical' does not mean 'identical' The possibility of factual distinctions between claims of the named plaintiff and those of the other class members does not destroy typicality, as similarity of legal theory may control even in the fact of differences of fact." (internal citations omitted). The questions of law and fact here, which predominate over questions that may affect individual claims, include:

      i. whether Defendants' acts and/or omissions as alleged herein violated the federal securities laws;

      ii. whether the Company's Class Period representations to plaintiff and the other class members misrepresented and/or omitted material facts;

      iii. whether Defendants acted with knowledge or with reckless disregard for the truth in misrepresenting and/or omitting material facts; and

      iv. to what extent the members of the Class have sustained damages and the proper measure of damages.

The typicality requirement is satisfied here because the claims asserted by Movant are based on the same legal theory and arise from the same event or practice or course of conduct that gives rise to the claims of the class members.

### (b) Wilder Will Fairly and Adequately Represent the Interests of the Class

Under Rule 23(a)(4), the representative party must also "fairly and adequately protect the interests of the class." In order to satisfy the adequacy requirement of Rule 23(a), there should not be a conflict between the interests of the class and the named plaintiff, nor should there be collusion among the litigants; and the plaintiff's attorney must be qualified and experienced. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 412 (S.D.N.Y. 2004).

The interests of Movant are clearly aligned with the members of the proposed class. There is no evidence of any potential conflict between Movant and the proposed class members. As detailed above, Movant shares substantially similar questions of law and fact with the members of the proposed class, his claims are typical of the members of the class, and he has taken significant steps to advance this litigation. In addition, Wilder has demonstrated he adequacy to serve as class representative by signing a certification affirming his willingness to serve as, and assume the responsibilities of class representative. Finally, Movant has selected

and retained counsel highly experienced in prosecuting securities class actions such as this to represent them. Kaboolian Dec., Ex. C.

### III. The Court Should Approve Wilder's Choice Of Counsel

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to court approval. See §21D(a)(3)(B)(v). Wilder has chosen Abbey, Spanier, Rodd, & Abrams, L.L.P. ("Abbey Spanier") to serve as Lead Counsel. Abbey Spanier has extensive experience in the area of securities litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. Kaboolian Dec. Ex. C.

### CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court appoint Wilder as Lead Plaintiff in this action, and approve Lead Plaintiff's choice of Abbey Spanier as Lead Counsel.

DATED: September 19, 2011

ABBEY SPANIER RODD &
ABRAMS, LLP

*/s/ Nancy Kaboolian*

Arthur N. Abbey
aabbey@abbeyspanier.com
Nancy Kaboolian
nkaboolian@abbeyspanier.com
212 East 39th Street
New York, New York 10016
Telephone: (212) 889-3700
Facsimile: (212) 684-5191

*Counsel for Lewis Wilder and Proposed Lead Counsel for the Class*

9