UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

LEWIS WILDER, as Trustee for the Lewis     :    Civil Action No. 1:11-cv-04947-PGG
Wilder Revocable Trust, 12/10/2010,         :
Individually and on Behalf of All Others     :    <u>CLASS ACTION</u>
Similarly Situated,                             :
                                      :    MEMORANDUM OF LAW IN SUPPORT
                Plaintiff,       :    OF MOTION FOR APPOINTMENT AS
                                      :    LEAD PLAINTIFF AND APPROVAL OF
      vs.                          :    LEAD PLAINTIFF'S SELECTION OF
                                      :    LEAD COUNSEL
NEWS CORPORATION, et al.,         :
                                      :
                Defendants.     :
                                      :
———————————————————— x

651408_1

Avon Pension Fund, Administered by Bath & North East Somerset Council (the "Pension Fund") respectfully submits this memorandum of law in support of its motion for: (1) appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (2) approval of its selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as lead counsel for the class.[1]

## I.    INTRODUCTION

Presently pending in this district is a securities class action lawsuit (the "Action") on behalf of purchasers of News Corporation's ("News Corp." or the "Company") common stock between March 3, 2011 and July 11, 2011, inclusive (the "Class Period").  The Action is brought against the Company, K. Rupert Murdoch (CEO and Chairman), James Murdoch (Director, Chairman and Chief Executive, Europe and Asia), and Rebekah Brooks (the chief executive of News International) for violations of the Securities Exchange Act of 1934 (the "1934 Act").

In securities class actions, the PSLRA requires district courts to appoint as lead plaintiff the "member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i).  The Pension Fund should be appointed as lead plaintiff because it: (1) timely filed this motion; (2) to its counsel's knowledge, have the largest financial interest in the relief sought by the class; and (3) will fairly and adequately represent the interests of the class.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).  In addition, the

---

[1]    The Pension Fund understands this Court's Individual Practice Rule 3.C that the "moving party shall electronically file motion and reply papers with the Clerk ***only when the entire motion has been briefed***."  (Emphasis in original).  The PSLRA, however, requires that "[n]ot later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class."  15 U.S.C. §15u-4 (a)(3)(A)(i)(II).  Here that date is September 19, 2011.  *See* §III.A.1., *infra*.  The Pension Fund is efiling its motion today to comply with the statutory deadlines imposed by the PSLRA.

Pension Fund's selection of Robbins Geller as lead counsel for the class should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## II.      FACTUAL BACKGROUND

News Corp., owner of Fox broadcasting, is a diversified global media company with well-known properties in the television, film, cable and print media industries. The Company began as a newspaper holding company, and its Newspaper & Information Services Division still accounts for approximately 19% of its annual revenues. The Company's newspaper division includes *The Wall Street Journal* and *Dow Jones* in the United States and *The Times*, *The Sun* and the recently shuttered *News of the World* in the United Kingdom. The Company's holdings account for approximately one-third of all national newspapers sold in the United Kingdom.

The Company's reputation and integrity is critical to its continued success with readers, viewers, advertisers and others with whom it does business. As Chairman Rupert Murdoch recently wrote in a letter accompanying News Corp.'s Standards of Business Conduct: "Th[e] public trust is our Company's most valuable asset: one earned every day through our scrupulous adherence to the principles of integrity and fair dealing." "The Company's reputation is one of our most valuable assets," the Business Standards proclaim. "Therefore, we are always careful to be sure that we don't do anything that would harm that reputation, or that would otherwise bring the Company into disrepute." To assure investors of its ability to maintain this public trust, the Company claimed to have "a firmly established policy of conducting its affairs in compliance with all applicable laws and regulations and observing the highest standards of business ethics." It did not – even though "Compliance with the law is crucial to the reputation of News Corporation and its business units, and to our ability to conduct our business all around the world."

- 2 -

In 2006, the Company's reputation was called into question amid allegations that the *News of the World* had employed an investigator to hack into voice mail boxes of cell phones belonging to members of the British royal family and their aides, and then used the information they discovered as the basis for stories published in the paper. The allegations sparked a public outcry and an investigation by Scotland Yard, and by 2007 had caused *News of the World* editor Andy Coulson to resign and had sent a *News of the World* reporter and investigator to jail. Throughout the controversy, News Corp. repeatedly claimed that the event was an isolated instance of misconduct by a rogue reporter. In fact, Scotland Yard detectives had found evidence that thousands of other phones had been hacked and that the stolen information had been fed to other reporters and editors at the newspaper, including news editor Ian Edmondson.

Although Scotland Yard failed to follow up on these leads (allegedly due to influence from the newspaper), the information was shared with News Corp. executives, as well as with some of the other victims of its actions. A few victims who sued, or threatened to do so, received large settlements to drop their claims. When *The Guardian* reported in July of 2009 that News Corp. had paid more than £1 million to gag phone hacking victims, Murdoch told *Bloomberg* news that he knew nothing about the payments. "If that had happened, I would know about it," the newspaper quoted him as saying. However, on July 18, 2011 News Corp. board member Tom Perkins (of Silicon Valley's Kleiner-Perkins) admitted "We've known about the phone hacking for a long time," and that the board "did discuss this several times two or three years ago, maybe earlier." "We paid some money out, fired some people and we thought we'd fixed it."

Although News Corp. had long known of the extent of the scandal, investors did not. In early 2011, news broke that Edmondson had been suspended for his role in the 2006 phone hacking incident. A few weeks later Coulson resigned his post as British Prime Minister David Cameron's

- 3 -

communications director amid questions about his role in the scandal.  Although it is now apparent that these events signaled the start of a widening controversy that would engulf News Corp., at the time, Murdoch and other executives continued to maintain that the hacking was limited to a few isolated instances of misconduct that had long since been corrected.  It was not until July 4, 2011 that the scandal broke with full force, when it was revealed that in 2002 the *News of the World* had intercepted and deleted voice mail messages in a cell phone belonging to Milly Dowler, a missing British schoolgirl who was later discovered to have been murdered.  The next day, the father of a man killed in the 2005 terrorist attacks on the London subways said he had been told his cell phone may also have been hacked by the newspaper.  The same week it was revealed that Coulson had authorized illegal payments to police officers while he was in charge of *News of the World*. Numerous advertisers, including Ford, the Halifax Bank, Vauxhall, Mitsubishi and Virgin Holidays announced they would suspend advertising with the paper.  On July 7, in full crisis mode, Murdoch announced that the *News of the World* would be shut down.  On July 8, Coulson was arrested. Thereafter, claims of illegal hacking continued to mount, as additional reports surfaced that the phones of commoners, celebrities, government officials, Scotland Yard investigators, and royals had been hacked by the *News of the World* and other tabloids, including another News Corp. paper, *The Sun*. Among those whose phones have allegedly been hacked are victims of the 9/11 terrorist attacks in the United States and relatives of British soldiers killed in Iraq and Afghanistan.

As a result of the widening scandal, News Corp. was forced to abandon its $12 billion bid to take control of British Sky Broadcasting.  *Wall Street Journal* publisher Les Hinton – who had overseen a 2007 internal investigation that News Corp. had long used to deny that phone hacking was widespread – has resigned.  Murdoch's most trusted lieutenant, Rebekah Brooks, has been arrested.

- 4 -

Following the disclosures during the first 2 weeks of July 2011, News Corp. stock declined to just over $15 per share, a decline that reduced the Company's market capitalization by nearly $8 billion.

## III.   ARGUMENT

### A.    The Pension Fund Should Be Appointed as Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the 1934 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i). First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint. 15 U.S.C. §78u-4(a)(3)(A)(i). Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that –

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii). The Pension Fund meets these requirements and should therefore be appointed as lead plaintiff.

### 1.    The Pension Fund's Motion Is Timely

The notice published in this action on July 20, 2011 advised class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the proposed class period; and (4) the right to move the Court to be appointed as lead plaintiff by September 18, 2011. *See* Declaration of David A. Rosenfeld in Support of Motion for Consolidation, Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel ("Rosenfeld Decl."), Ex. A. September 18th

- 5 -

was a Sunday.  Thus, pursuant to Rule 6(a)(1)(C), the "next day that is not a Saturday, Sunday, or legal holiday" is Monday, September 19, 2011.  Fed. R. Civ. P. 6(a)(1)(C).  Because the Pension Fund's motion is timely filed, it is entitled to be considered for appointment as lead plaintiff.

### 2. The Pension Fund Has the Largest Financial Interest in the Relief Sought by the Class

During the Class Period, the Pension Fund expended more than $5.5 million purchasing over 300,000 Class B shares of News Corp. at the artificially inflated price of $18.54 and suffered harm of more than $600,000 as the price of the shares fell in reaction to the disclosures in the first 2 weeks of July.  *See* Rosenfeld Decl., Ex. B.  To the best of its counsel's knowledge, there are no other plaintiffs with a larger financial interest.[2]  Therefore, the Pension Fund satisfies the PSLRA's prerequisite of having the largest financial interest.

### 3. The Pension Fund Satisfies Rule 23 of the Federal Rules of Civil Procedure at This Stage

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).  "At the lead plaintiff stage of the litigation, in contrast to the class certification stage, 'a proposed lead plaintiff need only make a "preliminary showing" that it will satisfy the typicality and adequacy requirements of Rule 23.'"  *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173 (S.D.N.Y. 2010) (Scheindlin, J.) (citation omitted).  "'Typicality' 'requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the  same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *Id.* at 173-74 (citation omitted).  "'The adequacy requirement is

---

[2]     Class member Iron Workers Local 17 Pension Fund joins in the Avon Pension Fund's Motion.  *See* Rosenfeld Decl., Ex. C.

- 6 -

satisfied where the proposed Lead Plaintiff does not have interests that are antagonistic to the class that he seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class  . . . .'" *Id.* at 174 (citation omitted).

The Pension Fund purchased News Corp. common stock on the NASDAQ during the Class Period at prices artificially inflated by defendants' materially false and misleading statements and/or omissions and suffered damages when the truth leaked into the market.  The Pension Fund's claims therefore arise from the same factual predicate as those in the complaints. *See Sgalambo*, 268 F.R.D. at 174.  In addition, the Pension Fund is not subject to unique defenses and there is no evidence that it seeks anything other than the greatest recovery for the class consistent with the merits of the claims.  As such, the Pension Fund satisfies the typicality and adequacy requirements at this stage.

### B.    The Court Should Approve the Pension Fund's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v).  This Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class."  15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa).

The Pension Fund selected Robbins Geller to serve as lead counsel. *See* Rosenfeld Decl., Ex. D.  Robbins Geller "has extensive experience litigating securities class actions and, therefore, has the ability to conduct the litigation effectively." *Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*, 2010 U.S. Dist. LEXIS 103218, at *16 (E.D.N.Y. 2010).  Indeed, "Robbins Geller has served as lead or co-lead counsel in numerous securities class actions, including *In re Enron Corp. Sec. Litig.*, No. 01-H-3624, 2005 U.S. Dist. LEXIS 41240, 2005 WL 3504860 (S.D. Tex. Dec. 22, 2005), as well as several cases filed in the district courts within the Second Circuit." *Id.* at *18. *See Kokkinis v. Aegean Marine Petroleum Network, Inc.*, No. 11 Civ. 0917

- 7 -

(BSJ) (JCF), 2011 U.S. Dist. LEXIS 54939, at *5 (S.D.N.Y. May 19, 2011) (Judge Francis noting that Robbins Geller has "substantial experience as lead counsel in securities class actions" and appointing the firm lead counsel); *Sgalambo*, 268 F.R.D. at 177 (appointing Robbins Geller as lead counsel). Based upon Robbins Geller's extensive experience and proven track record as counsel in securities class actions, the Pension Fund's selection of Robbins Geller as lead counsel should be approved.

## IV.    CONCLUSION

The Pension Fund has satisfied each of the PSLRA's requirements for appointment as lead plaintiff. Therefore, the Pension Fund respectfully requests that the Court grant its Motion for appointment as lead plaintiff, approve its selection of counsel and grant such other relief as the Court may deem just and proper.

DATED:  September 19, 2011                    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD


                                    s/DAVID A. ROSENFELD
                                   DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

- 8 -

651408_1

ROBBINS GELLER RUDMAN
  & DOWD LLP
RANDI D. BANDMAN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

[Proposed] Lead Counsel for Plaintiff

651408_1

CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2011, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 19, 2011.

s/ DAVID A. ROSENFELD
DAVID A. ROSENFELD

Robbins Geller Rudman & Dowd LLP
52 Duane Street, 7th Floor
New York, NY 10007
Telephone:  212/693-1058
212/693-7423 (fax)

E-mail: drosenfeld@rgrdlaw.com

# Mailing Information for a Case 1:11-cv-04947-PGG

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Arthur N. Abbey**
  aabbey@abbeyspanier.com

- **Nancy Kaboolian**
  nkaboolian@abbeyspanier.com

- **Jay B. Kasner**
  jkasner@skadden.com

- **Scott D. Musoff**
  smusoff@skadden.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)